UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
FEB 10 2009
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JAMES H. GARRISON,

    Petitioner,

v.                            Case No. 2:08cv522

K. M. WHITE, Mid-Atlantic
Regional Director, and
Patricia R. Stansberry,

    Respondents.

UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2241. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. §636(b)(1)(B) and (c), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. For the reasons stated herein, the Court recommends that the instant petition for a writ of habeas corpus be DENIED. Additionally, the Court DISMISSES Respondent K. M. White from the instant petition. Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004).

### I. BACKGROUND

#### A. Factual and Procedural History

On September 6, 1990, Petitioner, James H. Garrison ("Garrison"), was sentenced, in United States District Court for the Western District of Virginia, to a prison term of 264 months,

followed by five years of supervised release, for possession of cocaine with the intent to distribute and for distribution of a Schedule II substance. Garrison is presently in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution - Low, in Petersburg, Virginia ("FCI - Petersburg"). Garrison has been eligible for pre-release placement in a Residential Re-Entry Center ("RRC") since on or about December 25, 2008.

On May 13, 2008, Garrison's Unit Team at FCI - Petersburg considered him for pre-release placement in an RRC. After review, the Unit Team recommended Garrison be placed in an RRC for more than six months. That recommendation was forwarded to the warden at FCI - Petersburg, who in turn wrote a memorandum, on June 12, 2008, to the BOP's Mid-Atlantic Regional Director. That memorandum requested approval for Garrison to be given more than six months in an RRC.[1] On June 23, 2008, the Regional Director denied the warden's request.

On July 21, 2008, Garrison filed an administrative remedy with the warden at FCI - Petersburg, alleging that his Case Manager misrepresented his case in the memorandum submitted to the Regional Director. The request was denied on September 12, 2008. Garrison appealed this denial on September 18, 2008 to the Mid-Atlantic

---

[1] The BOP requires the approval of a Regional Director for RRC placement recommendations of greater than six months. Def. Mem. Supp. Ex. 3 at 4.

Regional Office. Because he failed to include a copy of the warden's denial, Garrison's appeal was denied. On September 22, 2008, Garrison properly resubmitted his appeal, but was denied again on October 17, 2008. Garrison did not appeal the regional office's denial, and on November 3, 2008, filed the instant petition for a writ of habeas corpus in this Court.

### B. Grounds Alleged

Garrison alleges that the BOP violated his due process rights and his rights under the Second Chance Act of 2007: Community Safety Through Recidivism Protection, Pub L. No. 110-199, 122 Stat. 657 (codified as amended in scattered sections of 18 & 42 U.S.C.) (2008). Principally, Garrison argues (1) that his Unit Team did not act in his best interest in submitting its recommendation for a stay in an RRC for more than six months and (2) that the BOP did not properly consider the five statutory factors that must be considered in assessing placement in an RRC. Regarding his first claim, Garrison argues that the Unit Team failed to mention certain qualifying factors - e.g., that he is indigent and that he was imprisoned before the Internet became widespread. Regarding his second claim, Garrison argues that the BOP is not properly implementing the Second Chance Act because its policy generally assumes six months in an RRC to be satisfactory. In this manner, Garrison argues that the Regional Director did not properly analyze the five statutory factors in Garrison's application and that,

therefore, the Regional Director abused her discretion.

Additionally, Garrison concedes that he has not exhausted his administrative remedies, but argues that failure is not a bar to this petition for a writ of habeas corpus because to continue to pursue his administrative remedies would be futile and cause irreparable injury.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion

Before a prisoner can file a § 2241 petition, he must exhaust his administrative remedies. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. Feb. 6, 2004) (per curiam) (unpublished) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001)). The Court may entertain an unexhausted claim only if the petitioner demonstrates cause and prejudice. Id.

The Regional Director denied Garrison's appeal on October 17, 2008, or more than two months before Garrison became eligible for placement in an RRC. Pursuant to the BOP's Administrative Remedy Program, after the Regional Director denied his complaint, Garrison could appeal that decision to the General Counsel of the BOP, which is the final administrative appeal. 28 C.F.R. § 542.15. Garrison failed to file this appeal, and instead initiated the instant petition for a writ of habeas corpus.

Garrison concedes he has not exhausted his administrative remedies, and the Court believes that Garrison has not shown cause

4

and prejudice. Notwithstanding whatever difficulties Garrison may have endured in the review process until he filed the instant petition with this Court, Garrison has not shown that exhausting his administrative remedies - by appealing to the General Counsel - would have resulted in cause and prejudice by being either futile or causing irreparable injury. If the General Counsel were to not make a decision until after Garrison became eligible for placement in an RRC, irreparable injury may exist, but Garrison has not offered any evidence that the additional appeal would take that amount of time.[2]

Therefore, the Court holds that Garrison has not exhausted his administrative remedies and recommends the petition be denied.

B. **The Second Chance Act**

Even though Garrison's claim is not exhausted, the Court will consider Garrison's petition on the merits.

Generally, the BOP is entrusted with the authority to designate the place of a prisoner's imprisonment. 18 U.S.C. §

---

[2] The Court is also concerned with the implications of finding cause and prejudice for Petitioner's unexhausted claims in this situation. The administrative review process for placements in RRCs is inevitably time-sensitive because the placement review process generally begins seventeen to nineteen months prior to a prisoner's projected release date, or five to seven months before a prisoner becomes eligible for RRC placement. Decl. Darrell Townes 2. To grant review of unexhausted claims because of this time-sensitivity may well encourage similar petitions in this Court before the administrative remedy process has run its course. Such a disposition would both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims.

3621(b). In making that designation, the BOP must consider five statutorily-mandated factors:

    (1) the resources of the facility contemplated;

    (2) the nature and circumstances of the offence;

    (3) the history and characteristics of the prisoner;

    (4) any statement by the court that imposed the sentence-

        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B) recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Id. The Second Chance Act further provides that, when a prisoner nears the end of his or her prison term, the Director of the BOP

> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Under the Act, the Director must also issue regulations that "shall ensure that placement in a community correctional facility by the Bureau of Prisons is . . . of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(c). The BOP amended its regulations to conform to the Act. See 28 C.F.R. 570.20 et seq. Additionally, the BOP issued a

memorandum after the passage of the Second Chance Act noting that prisoners are now eligible for up to twelve months in a halfway house, but that the warden must obtain the Regional Director's approval for RRC placements of greater than six months because BOP's "experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less." Memorandum from Joyce K. Conley, Assistant Director, Correctional Programs Division, and Kathleen M. Kenney, Assistant Director/General Counsel, to Chief Executive Officers, "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007," Federal Bureau of Prisons, U.S. Department of Justice, at 4 (Apr. 14, 2008) (hereinafter "Memo").

Despite a prisoner's eligibility for a placement of up to twelve months in an RRC, it is within the sole discretion of the BOP whether to place a prisoner in an RRC, and if so, for how long. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (4th Cir. 2005) (holding that the BOP must analyze the five factors in § 3621(b) and "that the BOP may assign a prisoner to [an RRC] does not mean that it must"). Further, while the BOP may consider a sentencing court's recommendation regarding a prisoner's placement in an RRC, such a recommendation "shall have no binding effect" upon the BOP. 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no

7

binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."). Therefore, Petitioner's request that this Court direct the BOP to place him in an RRC for the maximum period of twelve months is not relief which this Court may grant. Accordingly, the Court only has authority to review whether the BOP properly reviewed Petitioner's case on an individualized basis and followed § 3621(b)'s five factors.[3]

The Court holds that the BOP properly considered Petitioner's case individually and assessed the five factors of § 3621(b) in making its determination. Petitioner's Unit Team's recommendation, which requested granting a stay in an RRC for more than six months, explicitly used the five factors enumerated. Decl. Darrel Towns Attachment 2. The warden similarly recommended to the Regional Director that Petitioner receive more than six months in an RRC and analyzed the factors in that correspondence. Decl. Lynnell Cox Attachment 2. The Regional Director disapproved of that recommendation and stated as the reasoning: "Six months deemed to be appropriate as the justification does not stipulate any

---

[3] Petitioner appears to argue that the Memo's requirement that the Regional Director must approve of RRC placements exceeding six months evinces an improper categorical approach to RRC placements that runs counter to the Second Chance Act's purposes of providing an individualized assessment of each prisoner to better integrate them into their communities upon release. Because the Court finds that the BOP properly gave Petitioner an individualized assessment, using the five statutory factors, infra, Petitioner's argument is without merit in this case.

difficulty the innate may have finding employment, lack of family support, or any other compelling reasons for an extended stay." Id. On a separate form, entitled "Request for Over 6 Mos. RRC Placement Review," the Acting Regional Community Corrections Administrator and the Regional Correctional Programs Administrator made comments regarding Petitioner's history and characteristics, but did not address any of the other § 3621(b) factors. Decl. Lynnell Cox Attachment 3.

Section 3621 does not state which level of the BOP must make the RRC determination based upon the five factors. It is clear here that the Regional Director did not make independent findings regarding Petitioner relating to the five factors, but rather relied upon the warden's assessment, which was individualized and based upon the § 3621(b) factors. The Court deems that assessment to be sufficient because it is the Unit Team and the warden who are in a better position to individually consider prisoners for RRC placement, much as a trial court is more able to make findings of fact than an appeals court.

Because Petitioner's Unit Team and warden properly assessed Petitioner pursuant to § 3621(b), the Court must dismiss the instant petition. The Petitioner alleges his Unit Team acted in bad faith by not considering every factor regarding Petitioner's situation – including his indigency, breakdown in family ties, and the lack of the Internet when he was jailed – and by

misrepresenting the crimes for which he was convicted - assault with a deadly weapon rather than assault with a gun. Whatever the truth of these claims, the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis. Additionally, the Court believes Petitioner's allegation that his Unit Team acted in bad faith to lack merit because the Unit Team recommended him for exactly what Petitioner is requesting: a placement in an RRC of more than six months.

Finally, because the BOP exercised its discretion in accordance with the Second Chance Act, the Petitioner was not denied his due process rights.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Garrison's petition for writ of habeas corpus be DENIED and his claims be DISMISSED WITH PREJUDICE.

The petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003).

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the petitioner is notified that:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ _____
United States Magistrate Judge

Norfolk, Virginia
February 10, 2009

11